# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED GONZALES and KELLY GONZALES, individually and on behalf of all other similarly situated,<br><br>                Plaintiffs,<br><br>   v.<br><br>COMCAST CORPORATION, and DOES 1 through 50 inclusive,<br><br>                Defendants.<br>_____ / | CASE NO. 1:10-cv-01010-LJO-SKO<br><br>**ORDER REGARDING PLAINTIFFS' MOTION TO MODIFY THE SCHEDULE AND FILE AN AMENDED COMPLAINT**<br><br>(Docket No. 47) |

## I. INTRODUCTION AND BACKGROUND

On May 3, 2010, Plaintiffs Alfred Gonzales and Kelly Gonzales, individually and on behalf of all others similarly situated ("Plaintiffs"), filed a complaint against Comcast Corporation ("Comcast") stating claims for (1) violation of the Unfair Business Practices Act codified at Cal. Bus. & Prof. Code § 17200 *et seq.,* (2) violation of the Deceptive Practices Consumer Legal Remedies Act codified at California Civil Code § 1750 *et seq.*, and (3) breach of contract. (Doc. 1-1.) According to the complaint, Comcast is a provider of cable television, among other things, for which Plaintiffs contracted for service. Comcast allows customers to enroll in an automatic payment program whereby customers pay for the services Comcast provided through an electronic funds transfer ("EFT") which create automatic and recurring payment of funds through the enrolled

customer's bank account ("EFT Agreement"). (Doc. 1-1, ¶¶ 25, 31.) The EFT Agreement provides that customers have the right to revoke the authorization for the automatically recurring EFTs at any time and that any revocation takes effect three days after receipt of such revocation. (Doc. 1-1, ¶ 26.) Plaintiffs assert that they enrolled in the EFT program (Doc. 1-1, ¶ 27), subsequently cancelled their Comcast service in October 2008, and returned all the Comast equipment on November 7, 2008 (Doc. 1-1, ¶ 28). Plaintiffs received a notice stating that their ending balance on November 7, 2008, was $0.00. (*Id*.) Despite this, Plaintiffs assert that Comcast continued to charge Plaintiffs, via EFTs, for the months of November and December 2008 and January 2009. Plaintiffs assert that they have "not received full refunds for the unauthorized post-cancellation EFT charges billed to their credit or debt card accounts." (Doc. 1-1, ¶ 29.) Comcast allegedly issued a letter to Plaintiffs stating that they had been reimbursed in full for all unauthorized EFTs, but Plaintiffs maintain that they "were not paid back for all the funds that were taken out of their bank accounts after their authorization of EFTs was revoked." (Doc. 1-1, ¶ 31.) Plaintiffs assert that they were charged more in service fees than they owed. (Doc. 1-1, ¶ 33.)

On June 3, 2010, Comcast removed the case to this Court. After a scheduling conference, the Court issued a scheduling order on August 11, 2010, setting deadlines for initial disclosures, class discovery, and the filing of a motion for class certification. Specifically, initial disclosures were to be completed no later than August 30, 2010, class discovery was to be completed no later than January 28, 2011, and Plaintiff was to file a motion for class certification no later than February 28, 2011. (Doc. 25.)

On August 19, 2010, Plaintiffs served their first set of Requests for Production of Documents ("RFPs") on Comcast.[1] (Doc. 49, ¶ 4). Comcast served responses and objections on September 23, 2010. (Doc. 51-1, ¶ 2; Doc. 49, ¶ 5.) Comcast's response to the RFPs did not include any documents due to Comcast's need for a confidentiality agreement prior to disclosure. (Doc. 49, ¶ 5; Doc. 51-1, ¶ 2.) On November 2, 2010, Comcast sent a proposed confidentiality agreement to Plaintiff. (Doc. 51-1, ¶ 3.)

---

[1] Comcast asserts that service of Plaintiffs' first set of RFPs did not occur until August 23, 2010. (Doc. 51-1, ¶ 2.) Neither party provides a proof of service evidencing the date of service of these RFPs.

On November 22, 2010, the parties filed a Joint Mid-Class Discovery Status Report indicating that a confidentiality agreement with regard to discovery documents was necessary and would be submitted shortly for the Court's approval. On November 30, 2010, the parties filed a stipulated request for a protective order with the Court, which was granted on December 17, 2010. (Docs. 28, 29.)

On December 27, 2010, Plaintiff served a set of Requests for Admissions and noticed the Rule 30(b)(6) deposition of Comcast for January 25, 2011.

On February 2, 2011, the parties agreed to extend the class-discovery deadline to complete four scheduled depositions.[2] (*See* Docs. 30, 32, and 36.) Comcast took the deposition of Plaintiffs Kelly Gonzales and Alfred Gonzales on February 1 and 2, 2011, respectively. Plaintiffs conducted the deposition of Laurie Giammona, Comcast's Vice President of Customer Care for California, on February 3, 2011, and conducted the deposition of Patricia Thorell, Vice President of Payment Processing, on February 4, 2011. (*See* Doc. 32, 3:7-11.)

On February 28, 2011, Plaintiffs filed a motion to modify the scheduling order and to amend the complaint to include a new cause of action under the Electronic Funds Transfer Act ("EFTA") pursuant to 15 U.S.C. § 1693, *et seq*. (Doc. 32.) On March 18, 2011, Comcast filed an opposition to Plaintiffs' motion to amend the complaint. (Doc. 39.) On March 29, 2011, Plaintiffs sought an order allowing them to withdraw and amend their motion. Plaintiffs asserted that Comcast's opposition brief had identified some meritorious objections to Plaintiffs' proposed amended complaint, particularly Plaintiffs' proposed claim under the EFTA. (Docs. 44, 45.) Plaintiffs' request was granted; thus, Plaintiffs amended their motion to amend the complaint, and submitted a new proposed amended complaint. (Doc. 49-1, Exhibit A.)

---

[2] The request for an extension of the discovery deadline for purposes of completing the depositions was filed *after* the deadline had expired and *after* certain depositions conducted out of time were completed. (*See* Doc. 30.) The Court later denied this request as moot. (Doc. 36.)

3

## II.  DISCUSSION

**A.  Legal Standards**

### 1.  Standard for Modifying the Schedule Under Federal Rule of Civil Procedure 16(b)

Federal Rule of Civil Procedure 16(b) provides that the district court must issue a scheduling order that limits the time to join other parties, amend the pleadings, complete discovery, and file motions. Fed. R. Civ. P. 16(b)(1)-(3). Once in place, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" requirement of Rule 16 primarily considers the diligence of the party seeking the modification of the schedule. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* (internal citation and quotation marks omitted).

Good cause may be found to exist where the moving party shows, for example, that it: (1) diligently assisted the court in recommending and creating a workable scheduling order, *see In re San Juan Dupont Plaza Hotel Fire Litig.*, 111 F.3d 220, 228 (1st Cir. 1997), (2) is unable to comply with the deadlines contained in the scheduling order due to issues not reasonably foreseeable at the time of the scheduling order, *see Johnson*, 975 F.3d at 609, and (3) was diligent in seeking an amendment once the party reasonably knew that it could not comply with the scheduling order, *see Eckert Cold Storage, Inc. v. Behl*, 943 F. Supp. 1230, 1233 (E.D. Cal. 1996). *See Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999). "If [the] party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609. If the Court finds that there is good cause to modify the schedule, the court then turns to Rule 15(a) to determine whether the amendment to the pleadings sought should be granted. *Jackson*, 186 F.R.D. at 607 ("As the Ninth Circuit explained in [*Johnson*], once the district court has filed a pretrial scheduling order pursuant to Rule 16 which establishes a timetable for amending pleadings, a motion seeking to amend pleadings is governed first by Rule 16(b), and only secondarily by Rule 15(a).").

**2. Standard for Amendment Under Federal Rule of Civil Procedure 15(a)**

Federal Rule of Civil Procedure 15 provides that a party may amend its pleading only by leave of court or by written consent of the adverse party and that leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(1)-(2). The Ninth Circuit has instructed that the policy favoring amendments "is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

The factors commonly considered to determine the propriety of a motion for leave to amend are: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, and (4) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Ninth Circuit has held that the consideration of prejudice to the opposing party carries the greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Absent prejudice, or a strong showing of any of the remaining *Foman* factors, a presumption in favor of granting leave to amend exists under Rule 15(a). *Id.* Further, undue delay alone is insufficient to justify denial of a motion to amend. *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). Finally, "liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). *Contra Union Pac. R.R. Co. v. Nev. Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991) ("Amendments seeking to add claims are to be granted more freely than amendments adding parties.").

**B.    Good Cause Exists for a Schedule Modification Pursuant to Fed. R. Civ. P. 16**

Here, there is no express deadline in the Court's scheduling order limiting the time for seeking an amendment to the pleadings. The scheduling deadlines set by the Court relate only to the time for initial disclosures, class discovery, and the filing of a motion for class certification. Nevertheless, the amendment to the complaint sought necessarily requires revision of each of these deadlines as additional class discovery may be necessary and because the deadline to file a motion for class certification has expired. Therefore, the modification of the schedule that amendment of the pleadings will require is governed by the good cause parameters of Rule 16(b); the proposed amended complaint itself is subject to the limitations of Rule 15(a).

Plaintiffs assert that they learned new facts during depositions of Comcast employees on February 3 and 4, 2011, that necessitate amendment of the complaint. Plaintiffs assert that the initial motion to amend the complaint was sought within two weeks of reviewing the transcripts of those depositions. (Doc. 48, 7:25 - 8:1.) Plaintiffs contend that, prior to the Comcast depositions, they were unable to determine which Comcast customer agreement was in effect at the time of Plaintiffs' dispute with Comcast. Additionally, Comcast's policies with regard to refund, termination of service, and billing as set forth in their customer agreements were "unintelligible." Therefore, while Plaintiffs had copies of customer agreements at an early stage in the litigation, they did not understand Comcast's practices until depositions were taken.

Plaintiffs further maintain that it was not until the depositions that they learned that the erroneous billing they received from Comcast resulted not simply from the recurring payment plan, but because

> 1) Comcast does not issue clear, concise, and accurate final billing statements (as required by California law); and 2) Comcast has a policy of surreptitiously keeping accounts open after supposed "termination" (even after return of equipment and informing customers that the account is closed) for an arbitrary period, thereby subjecting customers' accounts to further service charges even after they have requested cancellation.

(Doc. 48, 5:25-26 - 6:1-4.) Plaintiffs assert that Comcast's "systematic policy of adding seven days to a customer's bill after they request termination of services," is not mentioned in any of the Comcast customer agreements and this policy was not known to Plaintiffs until the depositions were conducted. (Doc. 48, 8:6-8.) As a result of Comcast's policy regarding "porting" of telephone numbers upon cancellation of a customer's service, Plaintiffs allege they have claims under the Federal Cable and Television and Consumer Production and Competition Act of 1992 ("Cable Act") and the California Video Customer Service Act ("Video Act") that may be pled as predicate violations underlying their § 17200 claim for violations of the Unfair Business Practices Act. Plaintiffs argue that discovery of this new information "is a legitimate reason to seek leave to file an amended complaint." (Doc. 48, 8:12-13.)

Plaintiffs also maintain that they are in continuing negotiations with Comcast regarding production and service of other discovery that require modification of the scheduling order so that the discovery that has been propounded can be completed. (Doc. 48, 10:9-15.)

Comcast asserts that Plaintiffs exhibited a lack of diligence in seeking to amend their complaint. Specifically, Comcast avers that Plaintiffs' allegation that they did not receive clear and concise final billing statements is not a new, recently discovered fact. (Doc. 51, 5:26-27.)[3] The billing statements and invoices that Plaintiffs allege are unclear were produced by Plaintiffs to Comcast in their initial disclosures. Comcast maintains that the clarity of these billing statements – or lack thereof – would necessarily have been known to Plaintiffs at the time they received the billing statements. Further, Comcast argues that the "porting" of Plaintiffs' telephone number was known to Plaintiffs at the time they attempted to cancel their account. (Doc. 51, 7:25- 8:2.)

The portions of deposition transcripts provided by both parties reveal that, at the time they attempted to cancel their service in October 2008, Plaintiffs became aware that Comcast engaged in some sort of porting process when telephone subscribers cancelled their Comcast service. This is evidenced by the deposition testimony of Plaintiff Kelly Gonzales:

> Q. Did you cancel all of your services, phone, cable and Internet at the same time in 2008?
>
> A. Yes. I believe so.
>
> Q. You testified you were originally notified by Comcast in September or early October 2008. Did you notify Comcast subsequently?
>
> A. Yes. As Comcast would not release our phone number to be ported, so we had to wait another month because Comcast would not release our number to be ported.

---

[3] Comcast references Plaintiffs' April 4, 2011, proposed First Amended Complaint as a proposed "Second Amended Complaint." (Doc. 51, 7:19-23.) Comcast refers to Plaintiffs' February 28, 2011, proposed First Amended Complaint as a "filed" First Amended Complaint. To be clear, Plaintiffs have never previously been permitted to *file* a First Amended Complaint. Rather, Plaintiffs first filed a motion to modify the schedule and amend the pleadings on February 28, 2011, which included a *proposed* First Amended Complaint. (Docs. 31, 32, 33, 34.) On April 4, 2011, Plaintiffs were permitted to file an amended motion again providing a *proposed* First Amended Complaint. (*See* Docs. 46 - 50.) The question at issue here is whether Plaintiffs may be permitted to *file* a First Amended Complaint – there is no Second Amended Complaint. It is not accurate to refer to Plaintiffs' proposed amendment as a Second Amended Complaint. (*See* Doc. 51, 7:19-23 ("But Plaintiffs' deposition testimony and documents produced in discovery demonstrate that the information underlying the Second Amended Complaint's allegations was known and available to Plaintiffs well before they filed their original complaint, and undoubtedly before Plaintiffs filed their First Amended Complaint.").) It is, however, accurate to state that this is Plaintiffs' second motion to amend the pleadings.

(Doc. 51-2, Exhibit F, page 23.) Plaintiffs were also aware of an allegedly confusing billing process in 2008 when they received billings and invoices from Comcast:

> Q. What do you recall after reviewing those six [Comcast] invoices?
>
> A. Just statement dates and dates due.
>
> Q. Is there anything else from these invoices that you recall after reviewing them?
>
> A. That the invoices were very confusing.
>
> Q. Why were they confusing?
>
> A. Comcast does not make clear specifically what they are billing you for or how they arrive at their number.

(Doc. 51-2, Exhibit F, page 20.)

However, it appears that Plaintiffs were not aware of the details of Comcast's internal policy with regard to porting telephone numbers, how long the porting took, or that the final bill and cancellation of a customer's service could not actually be processed until Comcast had completed the porting process. The deposition testimony of Comcast employee Laurie Giammona clarified the interplay between the porting issue and customer account closure:

> A. . . . At that time, what we can tell is that the order was still open because the port had not been confirmed. So although the Gonzaleses were returning all of their equipment, in our system, the port out showed that it was still – that we did not have a connection at the home with a new phone number. So the disconnect could not be processed. The disconnect was, in fact, still open.
>
> And then the Gonzaleses had – in late November, we started seeing that there was a conflict with the phone number, that it was hitting the AT&T switch and our switch, so we were auditing to determine if the Gonzaleses had service, and then on or about 12/15, the Gonzaleses called into the call center, spoke to one of our billing agents in our Morgan Hill call center. At that time, the CAE tried to reprocess the full disconnect, but because the order was still open to port out the number, he could not process the disconnect and was trying to apply the credit.
>
> So had he been able to close the account, the Gonzaleses would have been refunded the money that was due to them, but because the port was still showing open, we were unable to physically close that account.
>
> We then received confirmation that the port out had occurred after the first of the year and – but the Gonzaleses, because the order had not been disconnected continued to get billed for service. So once that disconnect — once the port out was confirmed after the first of the year, the disconnect was processed and thus the refunds occurred for the Gonzaleses.
> . . .

| | | |
|---|---|---|
| Q. | | Is there a policy with respect to customers who give all their equipment back before a port out has happened? |
| A. | | In that case, if – the disconnection would not occur until the port out occurs. |

. . .

| | | |
|---|---|---|
| Q. | | But, in the event that the port has not occurred, that has to occur before you can cancel, terminate the account and generate the final bill? |
| A. | | That is correct. |
| Q. | | And in the agreements that we've read so far, there's no reference to porting as being one predicate or potential predicate to the termination of the account. No reference to porting so far at all, is there, in the agreements we've looked at? |
| A. | | I would agree that in what we have read there is not a porting . . . . |

(Doc. 53-2, Exhibit B.).

To the extent that Plaintiffs' allegations of violations of the Video and Cable Acts are predicated on Comcast's internal policy of keeping an account open until the porting is complete and being unable to calculate a final bill until such porting is complete – that information appears to be newly discovered.

The Court finds merit in Comcast's argument that Plaintiffs would have been aware of whether Comcast billing statements were accurate and understandable pursuant to Cal. Gov't Code § 52088.2(f) at the time those billing statements were received – regardless of the *reason* behind the inaccuracies. However, to the extent that Plaintiffs are asserting that inaccuracies in any final billing statement are only apparent when considered in light of Comcast's policy and actions in porting telephone numbers, this appears to be newly discovered through the February depositions.

Plaintiffs assert that they received transcripts of the deposition testimony two weeks following the February 3, and 4, 2011, Comcast depositions, and they filed their motion one week after transcripts were received. In general, the focus of the diligence inquiry under Rule 16 is the time between the moving party's discovery of new facts and its request for leave of the court to file an amended pleading. *See Zivkovic v. S. Cal. Edison Corp.*, 302 F.3d 1080, 1087-88 (9th Cir. 2002). The Court finds Plaintiffs were diligent in seeking to amend the complaint within 3 weeks of discovering this information. The fact that Plaintiffs modified their motion to amend does not make

1  them less diligent in seeking a modification to the schedule.

2      Further, Plaintiffs have been diligent in seeking discovery generally. The scheduling order
3  was issued on August 11, 2010, and Plaintiffs began serving discovery on August 19, 2010. (*See*
4  Doc. 49, ¶ 4.) After entering into an agreement regarding a protective order, Comcast produced at
5  least some documents in December 2010 that were responsive to Plaintiffs' August 2010 document
6  production request (Doc. 49, ¶ 9; 51-1, ¶ 6), and Comcast supplemented this document production
7  on January 25, 2011 (Doc. 49, ¶ 25; Doc. 49-9). While both parties complain that the other party
8  was dilatory in responding to requests or in raising concerns about various responses, objections, or
9  documents produced, there is nothing in the record that indicates either party engaged in tactics that
10  were dilatory or caused unreasonable delay. Due to newly discovered information that Plaintiffs
11  timely assert warrants a modification to the initial scheduling order, the Court finds good cause to
12  modify the scheduling order.

13  **C.**    **Propriety of Amendment Pursuant to Rule 15(a)**

14      The Court next turns to the propriety of the proposed amended complaint pursuant to Federal
15  Rule of Civil Procedure 15(a).

16      **1.**    **Prejudice to the Opposing Party**

17      As consideration of prejudice to the opposing party carries the greatest weight, the Court
18  considers this factor first. *Eminence Capital, LLC*, 316 F.3d at 1052. Comcast asserts that it will
19  be prejudiced if Plaintiffs are allowed to amend because it "will be required to expend additional
20  resources to assess and defend new claims and theories." (Doc. 51, 10:24-25.) The fact that
21  Comcast will be required to undertake additional discovery based on the proposed amended
22  complaint or expend additional resources to defend against Plaintiffs' claims is not substantially
23  prejudicial at this stage. *See Johnson v. Microsoft*, No C06-900RAJ, 2008 WL 803124, at *4-5
24  (W.D. Wash. Mar. 21, 2008) (quoting *In re Circuit Breaker Litig.*, 175 F.R.D. 547, 551 (C.D. Cal.
25  1997) ("The need for additional discovery is insufficient by itself to deny a proposed amended
26  pleading.") Further, while the amended complaint presents a new theory of recovery under Plaintiffs'
27  § 17200 claim, the ultimate nature of the litigation has not dramatically changed. *Cf. Morongo*,

28

1  883 F.2d at 1079 (affirming denial of amendment to add RICO claims because "of the radical shift
2  in direction posed by these claims, their tenuous nature, and the inordinate delay").

3  Plaintiffs' theory that the continued billing they experienced after closing their Comcast
4  account was the result of enrollment in the automatic payment plan has shifted to a theory that the
5  continued billing after account termination resulted from Comcast's policies with regard to porting
6  telephone numbers prior to final closure of an account.  This is not such a radical shift in direction
7  that the litigation will be subjected to inordinate delays.  Comcast asserts that it will "not be able to
8  defend itself against these new claims after discovery has closed." (Doc. 51, 10:17-18.)  As a
9  modification of the scheduling order is warranted, Comcast will have additional time to conduct any
10 necessary investigations or discovery required to adequately defend the suit.

11 Moreover, this litigation is not particularly advanced in age or close to trial.  While class
12 discovery was closed on February 28, 2011, merits-based discovery has not yet been conducted, and
13 the matter has not been scheduled for trial.  *DCD Programs*, 833 F.2d 183, 187-88 (finding
14 amendment not prejudicial where discovery commenced but was not yet closed, and no trial date was
15 pending).  Thus, the delay that amending the complaint will cause is not particularly onerous in light
16 of the posture of the case.

17 **2.  Bad Faith in Seeking Amendment**

18 The Court finds no evidence that Plaintiffs are seeking to amend their complaint in a bad
19 faith attempt to unnecessarily protract the litigation.  This factor does not weigh against amendment.
20 *See DCD Programs, Ltd.*, 833 F.2d at 187 ("Since there is no evidence in the record which would
21 indicate a wrongful motive, there is no cause to uphold the denial of leave to amend on the basis of
22 bad faith.").

23 **3.  Undue Delay in Seeking Amendment**

24 As discussed above, the Court finds that Plaintiffs' request to amend the complaint is not the
25 product of undue delay.  *See Kaplan v. Rose*, 49 F. 3d 1363, 1370 (9th Cir. 1994) (giving greater
26 weight to undue-delay factor where facts and theories sought to be added were known to moving
27 party early in the litigation).

28

**4.     Futility of Amendment**

Although the validity of the proposed amendment is not typically considered by courts in deciding whether to grant leave to amend, such leave may be denied if the proposed amendment is futile or subject to dismissal. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). Comcast has not argued that Plaintiffs' proposed amended complaint is futile, and this factor does not weigh against permitting amendment.

### III.    CONCLUSION

The Court concludes that the factors weigh in favor of allowing Plaintiffs to file the proposed amended complaint.

The Court HEREBY ORDERS THAT:

1. Plaintiffs' motion to modify the scheduling order is GRANTED;
2. Plaintiffs' motion to amend the complaint is GRANTED;
3. Plaintiffs shall file an amended complaint that conforms to the amended complaint proposed in Plaintiffs' motion within 2 days from the date of this order;
4. Defendants shall file an amended answer within 14 days after Plaintiffs' First Amended Complaint is filed; and
5. Within 14 days, the parties are to submit proposed deadlines for any additional class discovery necessary, filing a motion for class certification, filing an opposition to the motion for class certification, and filing a reply brief.

IT IS SO ORDERED.

**Dated:   May 12, 2011**                    /s/ Sheila K. Oberto
                                              UNITED STATES MAGISTRATE JUDGE

12